Thomas C. Horne, Esq. SBN 002951
**HORNE SLATON, PLLC**
6720 North Scottsdale Road, Suite 285
Scottsdale, AZ 85253
Tel: (480) 483-2178
Fax: (480) 367-0691
Email: Horne@HorneSlaton.com
*Attorney for Lawful Representatives*
*of Victim, Deceased*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roland G. Harris;  Jessica Perez; and Rodasia White, as Mother and Next Friend of A.H. and J.H., the minor children of victim, as beneficiaries for the wrongful death in and violation of civil rights of Jacob Michael Harris, <br><br>Plaintiffs,<br><br>vs.<br><br>City Of Phoenix, Kristopher  and Jane Doe Bertz, David And Jane Doe Norman, John and Jane Does 1-10, Entities 1-10,<br><br>Defendants. | Case No.  2:20-cv-00078-PHX-DLR<br><br>COMPLAINT<br>(Redacted)<br><br>(Assigned: Honorable Douglas L. Rayes) |

For their Complaint, Plaintiffs allege:

1. All parties are residents of Maricopa County Arizona, and jurisdiction and venue are proper in Maricopa County Arizona. Plaintiffs are Roland G. Harris, the victim's father; Jessica Perez, the victim's mother; and Rodasia White, mother of minor

1

children, A.H. and J.H., of the victim. The actions of individual Defendants were for the benefit of the community consisting of husbands and their wives whose names will be substituted when known.

2.  This Complaint arises from the shooting to death of Jacob Harris on January 10, 2019, at approximately 5:56 PM at 9200 W. Camelback Rd., Glendale, AZ. Kristopher Bertz shot Mr. Harris in the back with a rifle. After that, David Norman shot Jacob Harris four times.

3.  The following is the statement by Kristopher Bertz in the police report:

> He was advised a robbery took place, and as the suspects exited the restaurant and entered a vehicle and fled northbound, he abandoned his "soft perimeter" position north of the intersection and began following the vehicle to the location where the vehicle came to rest at 9200 West Camelback Road.
>
> . . .
>
> Officer Bertz followed the vehicle on Interstate 10 East, transitioned to the Loop 101 North as the primary vehicle with support from the Phoenix Police Department Air Unit fixed wing. He continued on the Loop 101 and was advised by Sergeant Sietter and Sergeant Clement of authorization to deploy the "grappler" vehicle immobilization device to apprehend and capture the vehicle.
>
> He observed Officer Norman successfully capture the left rear driver's side tire of the suspect vehicle causing the suspect vehicle to stop.
>
> Officer Bertz observed the effective capture of the suspect vehicle as it jolted the rear end of the suspect vehicle, causing the suspect vehicle to turn slightly to the side. He deployed a distraction diversion device. "Flash Bang" into the roadway south of the vehicle on the passenger

side allowing him time to place his vehicle in park, open his driver's door and provide lethal coverage. He observed the right rear passenger door open and a black male exit with a gun in his right hand. He observed the black male immediately look at him, then being running southeast toward the Circle K.

He gave commands for the black male to "stop" at which time he observed the black male turn slightly to this right, making a deliberate manner with the handgun, in his right hand, toward him.

Officer Bertz observed this movement and with his rifle already raised, thinking he was going to get shot by the black male he fired at least two (2) rounds from his carbine rifle. He observed the black male suspect continue to run and fall into the bushes on the south side of the roadway.

4.     The following is the statement of David Norman in the police report:

Officer Norman was outside his vehicle between the open door and his vehicle. He observed the suspect look back at Officer Bertz, take a few more steps, then turn back towards Officer Bertz a second time. He heard Officer Bertz engage the suspect, firing at the suspect at which time he fired his handgun at the suspect. He observed the suspect fall to the ground off the side of the road and the gun fall out of his hand. He observed additional SAU operators arrive on the scene along with a canine officer.

Officer Norman knew a plan was created to have the driver and two additional suspects exit the suspect vehicle. He observed the suspect on the ground continue to move as though he was crawling towards the gun on the ground at which time he observed an SAU operator deploy several AR-1 lethal munitions, stopping the suspect from crawling forward. He observed a canine officer deploy the police canine extricate the suspect back towards the car and SAU operators provide medical aid.

Officer Norman fired his handgun four (4) times at the suspect when he observed the suspect turn back the second time towards Officer Bertz.

3

5. The following is a statement by witness Achoa:

After the car stopped, a male got out of the right front seat of the red car and started to run to the south. He could not describe the male and <u>did not see anything [in] his hands</u>. (Emphasis added.)

6. The statement by Kristopher Bertz that "at which time he observed the black male turn slightly to this right, making a deliberate manner with the handgun, in his right hand, toward him" is false. A video taken from a helicopter clearly shows that Jacob Harris did not turn slightly to his right, make a deliberate manner with the handgun, or make any other threatening gesture, but was simply running away without any turning movements at all when he was shot with a rifle in the back.

7. An autopsy performed later found that the two shots were fired while Jacob Harris was "leaning forward".

## COUNT ONE
## (WRONGFUL DEATH)

8. The two police officers are liable for the wrongful death of Jacob Harris, because of their actions resulting in his death. The City of Phoenix is liable for the death of Jacob Harris under the doctrine of respondeat superior.

## COUNT TWO
## (VIOLATION OF CIVIL RIGHTS)

9. Defendants deprived Jacob Harris of life without due process of law in violation of amendments 4, 8, and 14, of the Constitution of the United States. This

violation of civil rights is actionable pursuant to 42 USC §1983. These facts also constitute excessive force also actionable under 42 USC §1983.

10. The City of Phoenix is liable under §1983 for the actions of the other Defendants for the following reasons: the individual Defendants had several shootings in the past resulting in death, and the city did not take sufficient action by discipline or training to prevent improper killings by these officers after being on notice of their propensity. The City's training and discipline in general were inadequate to prevent unconstitutional and inappropriate killings. Individual Defendants were acting in accordance with official policy, custom, or practice of the city of Phoenix when they violated Plaintiffs' civil rights under 42 USC §1983. An employer employee relationship existed between the city and the individual Defendants.

Therefore Plaintiffs prays for damages against Defendants and each of them for reasonable damages, for attorneys fees, for costs incurred, and for such other and further relief as the court deems proper.

**DATED** January 16, 2020.

                        **HORNE SLATON, PLLC**

                        /s/ Thomas C. Horne
                        Thomas C. Horne, Esq.
                        *Attorney for Lawful Representatives of Victim, Deceased*

# CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2020, I electronically transmitted this document to the Clerk's office using CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following CM/ECF registrants:

Kathleen L. Wieneke, Esq.: KWieneke@WienekeLawGroup.com;
Christina Gail Retts, Esq.: CRetts@WienekeLawGroup.com;
LPiasecki@Wienekelawgroup.com; M. Mahler, Esq.: MMahler@WienekeLawGroup.com
*Attorneys for Defendant City of Phoenix*

By: /s/ Madelyn Loftus