THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (#022349)
Will Knight (#30514)
Heather Hamel (#031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
knight@the-plf.com
hamel@the-plf.com

Firm email for docketing purposes:
admin@the-plf.com

*Attorneys for Plaintiff Roland Harris*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roland G. Harris, on his own behalf; as personal representative of the Estate of Decedent Jacob Harris; and as wrongful death plaintiff under Arizona law;<br><br>Jessica Perez, on her own behalf; and<br><br>Rodaisa White, as mother and next friend of A.H. and J.H., Decedent's minor children<br><br>Plaintiffs,<br><br>v.<br><br>City of Phoenix; Kristopher and Jane Doe Bertz; David and Jane Doe Norman,<br><br>Defendants. | No. CV-20-00078-PHX-DLR<br><br>**AMENDED COMPLAINT** |

For their Amended Complaint against Defendants City of Phoenix, Kristopher and Jane Doe Bertz, David and Jane Doe Norman, Plaintiffs Roland G. Harris, Jessica Perez, and Rodaisa White, through undersigned counsel, hereby allege as follows:

**PARTIES**

1. Plaintiff Roland G. Harris is a resident of Maricopa County, Arizona. He is the natural father of Jacob Harris ("Jacob") and has been appointed as the Personal Representative of Jacob's Estate. Mr. Harris brings this action both on his own behalf as Jacob's father, as the Personal Representative of Decedent's Estate, and as the statutory plaintiff on behalf of Jacob's wrongful death beneficiaries under Arizona law.[1]

2. Plaintiff Jessica Perez is a resident of Florida. She brings this action on her own behalf as Jacob's natural mother with a constitutionally protected right in a familial relationship with her son. She is also a wrongful death beneficiary under A.R.S. § 12-612.

3. Plaintiff Rodaisa White is a resident of Maricopa County. She brings this action on behalf of her two minor children, A.H. and J.H., who have the constitutional rights to familial relationships with their father. A.H. and J.H. are also wrongful death beneficiaries under A.R.S. § 12-612.

4. Upon information and belief Defendants Kristopher and Jane Doe Bertz are a married couple residing in Maricopa County, Arizona.

5. Upon information and belief Defendants David and Jane Doe Norman are a married couple residing in Maricopa County, Arizona.

6. Defendant City of Phoenix (the "City") is a municipal corporation created under the laws of the State of Arizona. The City is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and to preserve for its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

---

[1] Roland Harris is named as the single wrongful death plaintiff for plaintiffs' claims arising under A.R.S. § 12-611 et seq., both on his own behalf and on behalf of all of his son's wrongful death beneficiaries as defined by Arizona law.

- 2 -

7. The City—on its own or by delegating responsibility to its law enforcement agency, the Phoenix Police Department ("PPD")—has established and implemented policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and public relations during law enforcement operations.

8. Every act and omission of the employees, representatives, and agents of the Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and the City of Phoenix, by their authority as sworn officers, and within the course and scope of their employment.

## JURISDICTION, AND VENUE

9. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiffs' claims for violation of their civil rights under 42 U.S.C. § 1983 and pendent jurisdiction over their state law claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within one year of the filing of the original Complaint, and this Court otherwise has jurisdiction.

11. This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

## GENERAL ALLEGATIONS

12. Jacob Harris ("Jacob") was the son of Roland Harris and Jessica Perez, and the father of two young children: J.H. and A.H., both born to Rodasia White.

13. Upon information and belief, shortly after midnight on January 11, 2019, Phoenix Police Officers Kristopher Bertz and David Norman began following a 2001 Red

- 3 -

1 Honda Passport (the "Passport") after learning that its occupants had allegedly engaged in a robbery of a Whataburger restaurant.

14. Officers Bertz and Norman followed the Passport with support from the Phoenix Police Department Air Unit fixed wing.

15. Officer Norman deployed a grappling-hook vehicle immobilization device to the Passport's rear driver's-side tire.

16. Officer Norman then hit his brakes and brought both vehicles to a stop.

17. Simultaneously, or nearly simultaneously, Officer Bertz brought his own vehicle to the rear and right of the disabled Passport.

18. Within one second of the Passport coming to a stop, Officer Bertz deployed an incendiary device commonly referred to as a "flash bang" or "stun grenade" into the roadway, causing a bright flash of light and explosive sound mere feet away from the Passport's rear passenger door, adjacent to where Jacob was sitting inside the vehicle.

19. Jacob immediately exited the Passport's rear passenger door and began running.

20. Upon information and belief, Jacob was unarmed.

21. Officer Bertz then exited his vehicle and fired a 5.56mm caliber tactical assault-style rifle—specifically, a Daniel Defense ("DD") M4 carbine, v4—at Jacob's back "at least" two times while he was running away.

22. Upon information and belief, at least one of the rounds Officer Bertz fired struck Jacob in his back.

23. Simultaneously, or nearly simultaneously, Officer Norman fired his Glock 34—a 9mm semi-automatic sidearm—at Jacob's back at least four times while he was running away.

24. Upon information and belief, at least one of the rounds Officer Norman fired struck Jacob in his back.

25. One of the two nearly-simultaneous bullet strikes, or a combination of both, caused Jacob to fall face down on the side of the roadway.

26. Upon information and belief, Jacob attempted to obey the officers' commands by laying still and raising his hands over his head with open palms.

27. As Jacob laid on ground, wounded and attempting to comply, PPD officers, including Defendants Bertz and Norman, shot Jacob multiple additional times with AR-1 "less lethal" cannisters.

28. Jacob laid on the ground–unarmed and bleeding with his hands in the air— for nine and-a-half minutes without medical attention.

29. Just over nine-and-a-half minutes after Defendants Norman and Bertz shot Jacob in the back, another PPD officer released a police dog to attack Jacob.

30. The dog latched on to Jacob's leg and dragged him —still lying on his back with his hands above his head—a lengthy distance toward the police vehicles, whereupon several PPD officers jumped on top of Jacob and handcuffed him.

31. Upon information and belief, when the Phoenix Fire Department arrived, Jacob was still breathing.

32. Phoenix Fire instructed PPD to remove Jacob's handcuffs so that they could render emergency medical care.

33. Phoenix Fire then rushed Jacob to the trauma center at Abrazo West Campus.

34. Medical efforts to save Jacob's life were unsuccessful, and Jacob died approximately 13 minutes after arriving at the hospital.

35. An independent autopsy later revealed that Jacob had two gunshot wounds to his lower back, as well as significant bruising to both sides of his face and his interior right buttock.

# FIRST CLAIM FOR RELIEF
## Wrongful Death Under Arizona Law
### (Asserted by Plaintiff Roland Harris Only Against All Defendants)

36. Plaintiffs incorporates the allegations contained in the above paragraphs as if they were fully set forth herein.

37. Upon information and belief, Officer Bertz and Officer Norman were involved in the planning of the apprehension of Jacob, including the plans to (a) disable the Passport with a grappling hook; (b) deploy a flash-bang stun grenade by the passenger's side door; and (c) immediately exit their vehicles with guns drawn, ready to fire.

38. Upon information and belief, Officer Bertz and Norman both deployed lethal force – aiming their firearms at Jacob and shooting him in the back as he ran away from them.

39. Upon information and belief, rather than rendering emergency aid to Jacob, Officer Bertz, Officer Norman, and other Phoenix Police officers deployed additional force against Jacob including but not limited to: firing multiple "less lethal" munitions at him; releasing a police dog to attack and drag him; piling on top of Jacob; handcuffing him; and restraining him in that position until Phoenix Fire arrived and demanded that the handcuffs be removed so they could render emergency medical care.

40. These Phoenix Police officers, including and not limited to Officers Bertz and Norman, engaged in both ordinary and gross deviations from the standard of care in their use of force against and treatment of Jacob.

41. Jacob died as a direct and proximate result of these officers' ordinary and gross deviations from the standard of care.

42. As a result of Jacob's death, Plaintiff Roland Harris, and wrongful death beneficiaries Jessica Perez, A.H. and J.H. have each and all suffered damages in an amount to be proven at trial.

///

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Violation of 4th Amendment Right against Excessive Force**
**(Asserted by Plaintiff Roland Harris Against Officers Bertz and Norman Only)**

43. Plaintiffs incorporates the allegations contained in the above paragraphs as if they were fully set forth herein.

44. 42 U.S.C. § 1983 provides, in relevant part, as follows:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . .

45. Jacob Harris was a citizen of the United States, and Defendants Kristopher Bertz and David Norman are "persons" for the purposes of 42 U.S.C. § 1983.

46. At the time of the above-described, complained-of events, the Fourth Amendment to the United States Constitution clearly established Jacob's right to be secure in his person from unreasonable seizure through excessive force.

47. Defendants Bertz and Norman violated these rights when they shot Jacob, deployed "less lethal" munitions at him, and released a canine on him prior to his eventual death.

48. Defendants Bertz and Norman engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Jacob Harris's federally protected constitutional rights.

49. The above-described conduct intentionally deprived Jacob Harris of his constitutional and statutory rights and caused his death, as well as enormous pre-death suffering as he lay on the ground, bleeding from multiple gunshot wounds, being shot by multiple less-lethal munitions, and ultimately being attacked by a police dog.

50. Defendants Bertz and Norman are not entitled to qualified immunity for the complained-of unconstitutional and illegal conduct.

51. As a result of the foregoing, Jacob Harris suffered damages in an amount to be proven at trial, and to be collected by Plaintiff Roland Harris, as personal representative for the Estate of Jacob Harris.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Interference with 14th Amendment Rights to Familial Society and Companionship of Jacob Harris**
**(Asserted by all Plaintiffs against Defendants Bertz and Norman)**

52. Plaintiffs incorporates the allegations contained in the above paragraphs as if they were fully set forth herein.

53. The 14th Amendment to the United States Constitution guarantees the rights of every American citizen and resident to be free from interference with their rights to familial society and companionship without due process of law.

54. Officer Bertz and Norman violated the rights of Roland Harris, Ms. Perez, A.H. and J.H. to the familial society and companionship of Jacob, without due process, when they used excessive force against Jacob in a manner that ultimately resulted in his death.

55. As a direct and proximate result of these constitutional violations, Roland Harris, Ms. Perez, A.H. and J.H. suffered damages in amounts to be proven at trial.

///

# FOURTH CLAIM FOR RELIEF
## 42 U.S.C. § 1983 - Municipal Liability under *Monell*
### (Asserted by Plaintiff Roland Harris Against City of Phoenix Only)

56. Plaintiff incorporates the allegations contained in the above paragraphs as if they were fully set forth herein.

57. The Phoenix Police Department has an extensive, documented history of the overuse and abuse of lethal force that has been largely unremedied by disciplinary action.[2]

58. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or informal custom deprives an individual of its rights protected by the Constitution.

59. Such municipal liability exists when a city fails to properly train, supervise, or discipline its employees, amounting to a deliberate indifference to a plaintiff's constitutional rights.

60. At all times relevant hereto, Defendant City of Phoenix had a constitutional duty to properly train, supervise, and discipline their employees and agents.

61. Upon information and belief, both Officers Bertz and Norman were involved in prior fatal shootings of civilians, yet neither was meaningfully disciplined by the City and both were placed in assignments where the need to evaluate the use of lethal force was entirely foreseeable.

---

[2] By way of illustration, on August 14, 2014, Phoenix Police Sergeant Percy Dupra shot and killed a Phoenix resident named Michelle Cusseaux on a mental health call; Sergeant Dupra was not terminated despite a finding of a policy violation. On December 2, 2014, Phoenix Police Officer Mark Rine shot an unarmed father named Rumain Brisbon in the back and killed him; Officer Rine was never terminated despite the killing resulting in a $1,500,000 civil settlement to Mr. Brisbon's family. In 2018, Phoenix Police officers initiated a record 44 shootings of civilians, which dwarfed the number of officer-involved shootings in cities of similar size and surpassed the number of officer-involved shootings in major cities such as New York and Los Angeles. Upon information and belief, in the ten years leading up to 2019, the City of Phoenix paid over $26 million in settlements for excessive use of force by its police officers.

62. Defendant City of Phoenix breached its duties to properly train, supervise, and discipline Officers Bertz and Norman, and created a culture and department-wide practice of condoning the inappropriate use of force, including lethal force, either explicitly or implicitly.

63. Defendant City of Phoenix tacitly or overtly sanctioned this policy, pattern, practice, or custom of misconduct, which amounts to a deliberate indifference to Plaintiff's constitutional rights.

64. This unconstitutional behavior was carried out pursuant to a policy, pattern or practice, or custom, whether formal or informal, which violates the constitutional rights of Plaintiffs and others in their situation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Roland Harris, Jessica Perez, and Rodaisa White on behalf of A.H. and J.H. hereby request that the Court enter judgment against Defendants and issue an award in Plaintiffs' favor as follows:

a. For all wrongful death damages available to them under Arizona law, in amounts sufficient to compensate Mr. Harris, Ms. Perez, A.H., and J.H. for the loss of Jacob;

b. For all damages available to Jacob Harris's estate under 42 U.S.C. § 1983, including general, special, nominal, and punitive damages in an amount sufficient to compensate Jacob's estate for the violation of his constitutional rights and to punish Defendants Bertz and Norman for their intentional acts;

c. For all damages available to Mr. Harris, Ms. Perez, A.H. and J.H. under 42 U.S.C. § 1983, including general, special, nominal, and punitive damages in an amount sufficient to compensate them for the loss of their familial relationship with and companionship of Jacob;

d. For prejudgment interest on all liquidated sums;

e. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and as provided for by Arizona law;

f. For Plaintiffs' costs and other expenses incurred in this action; and

g. Such other and further relief as the Court deems just.

DATED this 7th day of May, 2021.

THE PEOPLE'S LAW FIRM, PLC
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003

By: s/ Stephen D. Benedetto
Stephen D. Benedetto
Will Knight

**CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2021, I electronically transmitted the attached document to the Clerk of the Court using the ECF System. This document and the Notice of Electronic Filing were automatically served on the same date to the following, who are registered participants of the CM/ECF System:

Kathleen L. Wieneke
Christina Gail Retts
Lea Shapiro
WIENEKE LAW GROUP PLC
1095 West Rio Salado Parkway, Suite 209
Tempe, Arizona 85281
kwieneke@wienekelawgroup.com
cretts@wienekelawgroup.com
lshapiro@wienekelawgroup.com


By: /s/ Stephen D. Benedetto
*An employee of The People's Law Firm*