THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834

*Firm email for service of documents:*
admin@the-plf.com

*Attorneys for Plaintiff Roland Harris*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Roland G. Harris et al., | Case No. 2:20-cv-00078-PHX-DLR |
| Plaintiffs, | |
| v. | **RESPONSE TO DEFENDANT KRISTOPHER BERTZ'S MOTION FOR FEES AND COSTS** |
| City of Phoenix et al., | |
| Defendants. | |

Plaintiffs Roland G. Harris, Jessica Perez, and Rodaisa White (on behalf of her minor children, A.H. and J.H.), hereby respond to Defendant's Motion for Fees and Costs (Doc. 201). The Court should deny the Motion for two reasons. First, section 13-420 permit reimbursement only of attorneys' fees and costs "incurred" by the defendant—and the applicant here, Defendant Kristopher Bertz, who did not incur any attorneys' fees or costs. And second, the request is premised on A.R.S. § 13-420, which is preempted by federal law. These arguments are more fully developed in the following Memorandum of Points and Authorities, incorporated herein by this reference.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     OVERVIEW**

Though not immediately clear from the caption and introduction, there is no question that the Motion for Attorneys' Fees and Costs is filed by Defendant Kristopher Bertz.  In that motion, Defendant Bertz seeks an award of attorneys' fees under A.R.S. § 13-420 for approximately $40,000 in fees and costs incurred after the Court's dismissal of the Plaintiffs' federal excessive force claims arising out of the same incident.  The invoices Defendant Bertz submits in support of his request makes clear that the fees were incurred by the City of Phoenix—who makes no application for attorneys' fees.  Defendant Bertz's application for attorneys' fees under section 13-420 therefore hinges on the answers to two questions:

1. *Does A.R.S. § 13-420 permit a defendant to recover attorneys' fees that were billed to another?*

2. *Would the application of A.R.S. § 13-420 in this case be preempted by federal law?*

As the moving party, Defendant Bertz carries the burden of persuading the Court that the answers to both of these questions is yes.[1]  If he fails, his application for attorneys' fees should be denied.

**II.     The unambiguous language of A.R.S. § 13-420 precludes Bertz's fee application because he did not "incur" the fees.**

A.R.S. section 13-420 expressly defines the scope of who may apply for attorneys' fees:  "The court shall award reasonable attorney fees . . . <u>incurred by a defendant</u> in the defense of any civil action based on conduct otherwise justified pursuant to this chapter if the defendant prevails in the civil action."[2]  Because it does not appear that any court has

---

[1] *See, e.g.*, *Nolan v. Starlight Pines Homeowners Ass'n*, 167 P.3d 1277, 1285-86 (Ariz. App. 2007) (noting that the initial burden of proof on an application for attorneys' fees is on the moving party to "establish[] its entitlement to fees.").
[2] A.R.S. § 13-420.

interpreted this provision,[3] and in particular the phrase "incurred by a defendant," resolution of this issue will hinge on the rules of statutory interpretation.

Where a statute is "unambiguous" it "must be interpreted according to its plain meaning."[4] The plain meaning of the term "incur," via reference to Arizona's appellate jurisprudence in other contexts, is simple: "to become liable for."[5] On this issue, the Arizona Supreme Court's holding in *Samsel v. Allstate Insurance Company* is instructive, even if not directly on point. In *Samsel*, the defendant insurance carrier argued that it was not obligated to reimburse an insured for medical bills paid by a health insurer because those bills were paid by the health insurance company—and therefore not "incurred" by the insured. The Court disagreed, concluding that regardless of who paid the bills, the insured had "incurred" the expenses by becoming "legally liable" for their payment. In *Coconino County v. Fund Adm'rs Ass'n*, 719 P.2d 696, 696 (App. 1986), the Court of Appeals had explained its rationale for a similar holding:

> "Incur" is generally accepted to mean "to become liable for," not "to pay for." . . . Micole was hospitalized at a private institution. The hospital admission form was signed by Micole's legal guardian on his behalf and expressly provided Micole and his guardian were the ultimate guarantors of the treatment costs. Whether the possibility was remote or not, the private hospital could have proceeded against Micole, the guarantor, and sought payment.[6]

---

[3] The District Court has only faced applications under 13-420 on a handful of occasions (none of which involved a dispute about whether fees were incurred by the applicant) and it does not appear that there are any Arizona state court opinions (reported or otherwise) even addressing, much less interpreting, section 13-420.
[4] *Flood Control Dist. of Maricopa Cnty. v. Gaines*, 43 P.3d 196, 199 (Ariz. App. 2002).
[5] *Samsel v. Allstate Ins. Co.*, 59 P.3d 281, 285 (Ariz. 2002) (quoting *Shanafelt v. Allstate Insurance Co.*, 552 N.W.2d 671, 767 (Mich. App. 1996)). *See also* Black's Law Dictionary 782 (8th ed. 2004) (defining "incur" as "to suffer or bring on one self (a liability or expense).").
[6] 719 P.2d 693, 696 (Ariz. App. 1986) (internal citations omitted).

1  On first blush, this line of case law might seem to weigh in favor of Defendant
2  Bertz's application. But the point here is not about who paid the bills—it is about who was
3  "liable" for pay the bills. The case law is clear: To be deemed to have "incurred" a bill, a
4  party must have some legal liability for it (even if someone else is primarily responsible)
5  And it raises a single question that Defendant Bertz has the burden of answering to the
6  Court's satisfaction: ***Does the evidence submitted establish that Defendant Bertz "became***
7  ***liable for" the attorneys' fees for which he now seeks reimbursement?***
8  Through 60+ pages of affidavits and supporting documents, the only evidence of
9  "liability" for defense counsel's fees that Defendant Bertz has submitted are a series of
10 invoices—each of which show that the amounts were invoiced not to Defendant Bertz, but
11 to the City of Phoenix.



21 Indeed, each and every one of the nine (9) invoices Defendant Bertz submits to this Court
22 contain these same identical entries: Sent to the City of Phoenix, listing the City of Phoenix
23 as the client.

26 / / /

To be clear, that the bills were likely paid by the City of Phoenix is immaterial.[7] It is no mystery, and is not reasonably disputed, that the City is the indemnitor for its police officers. Rather, the material issue here is whether Defendant Bertz, like the insureds in *Samsel* and *Fund Administrators Association*, had assumed a liability to pay these bills (such that they could ultimately be collected from these parties if their respective indemnitors failed to pay for some reason). And unlike in those cases, Defendant Bertz has presented *no evidence* of his own liability: no bills with his name on it, no contractual language obligating him to guarantee payment, and no other indicia of financial liability.

Having failed to further *any* evidence that he "became liable for" the attorneys' fees for which he now seeks reimbursement, Bertz has failed to establish that he "incurred" any attorneys' fees as required by A.R.S. § 13-420.

**III. If the court deems the language of section 13-420 ambiguous it must look to legislative history, which also defeats the application.**

Plaintiffs submit that the language of section 13-420 is unambiguous and that "incur" only has one reasonable interpretation: that, as defined by both Arizona's courts and Black's, a person must "become liable for" an expense in order to "incur" it. Accordingly, Plaintiffs assert that Defendant Bertz has failed to meet his burden of proving he incurred any attorneys' fees in this matter. Even if the Court were to disagree with this analysis, however, Defendant Bertz would still not be entitled to fees.

Statutory language is "ambiguous" if it "gives rise to more than one reasonable interpretation."[8] If a statutory provision is ambiguous the court must turn to the legislative history for guidance as to legislative intent.[9] Here, the overwhelming evidence is that the

---

[7] That is not the argument Plaintiffs assert here (as noted above, the Arizona Court of Appeals has been clear that "to become liable for" does not equal "to pay for."). Any attempt by Defendant Bertz to rebut its relevancy on reply would be a classic straw man.
[8] *Woods v. Carey*, 722 F.3d 1177, 1181 (9th Cir. 2013).
[9] *See SEC v. McCarthy*, 322 F.3d 650, 655 (9th Cir. 2003).

state legislature had *no intent* to create a fee-shifting provision on behalf of individual police officers whose attorneys' fees were paid by their employer.

Section 13-420's attorneys' fee provision was enacted in 2006, as part of a Senate Bill 1145. The express purpose of the bill was to expand Arizona's justification statutes contained in Title 13, Chapter 4.[10] This designation is important: Chapter 4 is a portion of Arizona's Criminal Code dealing with the defense of justification to criminal charges. It includes 21 individual sections articulating the circumstances under which justification is available as a defense (only two of which concern the use of force by law enforcement—sections 13-409 and -410).

According to the legislative "Fact Sheet" for SB 1145, the motivation for the Bill was straight-forward: Prior to the Bill, Arizona courts had limited application of several of Arizona's justification defenses to acts that occur in one's home.[11] The version of the justification statutes in effect at the time included an express statement of legislative policy focusing on the needs to protect the rights of Arizonans to defend their homes—apparently resulting in a Court of Appeals determination that, based on legislative intent, the justification statutes did not extend to permit a woman to use force against a possible sexual assailant because the incident occurred outside of her own home.[12]

SB 1145 included provisions aimed at expanding Arizona's justification defenses beyond the home,[13] and clarified presumptions of reasonableness available to citizens who used force to defend themselves while on or off their property.[14] It was at this time, as part of this same bill, that the attorneys' fee provision of 13-420 was created. Thus, the purpose

---

[10] *See* Exhibit 1, attached.
[11] *Id.*
[12] *Id.* (citing *State v. Barraza*, 104 P.3d 172 (App. 2005)).
[13] *Id.*
[14] *Id.*

of this new fee provision comes into focus: to permit citizens to use justified force to defend themselves from would-be assailants and burglars without having to fear financial ruin in a civil lawsuit.

There is absolutely no evidence that the State Legislature ever contemplated—much less intended—that this statute would be deployed by police officers to seek awards of attorneys' fees in civil rights cases.[15] And there is certainly no evidence that by permitting reimbursement of attorneys' fees "incurred by a defendant" that the legislature intended to permit fee awards to police officers who are indemnified by their departments. Defendant Bertz's efforts here—to leverage a little-cited statute to seek reimbursement of attorneys' fees for which he has not established any legal liability—are simply a bridge too far.

### IV. A.R.S. section 13-420 is arguably preempted by federal law in any event.

The foregoing analyses resolve Defendant Bertz's motion on their face. But if the Court disagrees and is inclined to consider an award of fees, it must consider the issue of preemption. Because while the District of Arizona has had multiple opportunities to review A.R.S. § 13-420—and has concluded that fees awards under section 13-420 are preempted by federal law in cases where both state and federal claims are asserted[16]—Defendant Bertz's application raises a distinct issue: namely, whether section 13-420 is preempted when a case sounds in civil rights but the application is limited to state law claims.

The District Court's opinion in *Anderson v. Armour* offers some guidance. In the *Anderson* decision, the Court explained that there are two distinct types of preemption. Field preemption, which occurs where "Congress intends federal law to 'occupy the field,'"[17] is not at issue here. Conflict preemption, by contrast, occurs when state law "stands

---

[15] The issue of legislative intent was previously raised in *Longoria v. Pinal County*, 2:15-cv-00043 (Doc. 117). It was never resolved, however, because the District Court found that 13-420 was unambiguous and an explanation of legislative history was therefore inappropriate. (Doc. 125).
[16] *See, e.g.*, *Anderson v. Armour*, 2021 WL 4950344 (D. Ariz. Oct. 25, 2021).
[17] *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2388, 147 L. Ed. 2d 352 (2000)).

as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[18] And, in ruling that 13-420 could not allow a civil rights defendant to apply for attorneys' fees in a case where both federal and state claims were asserted, the District Court noted the clear intention of Congress in enacting 42 U.S.C. § 1988: namely, to permit for awards of attorneys' fees in civil rights cases for excessive force "only if the plaintiff's claims were 'frivolous, unreasonable or without foundation.'"[19]

The current case differs from *Anderson* in one obvious way: Unlike in that case, Plaintiffs' federal civil rights claims here were dismissed before the fees at issue were incurred. Thus, the provisions of A.R.S. § 13-420 and 42 U.S.C. § 1988 are in not in direct conflict with respect to simultaneously litigated claims. But that does not resolve the issue. Because it is undisputed that this case sounds in civil rights, and that Plaintiffs originally filed this matter as a section 1983 civil rights matter—but that Plaintiff's civil rights claims were previously dismissed as deficiently pled.[20] While Defendant Bertz has prudently attempted to navigate this issue by only seeking his fees incurred after the 1983 claim was dismissed, it also puts the cart before the horse: It presupposes that the procedural dismissal of civil rights claims, leaving only a state law claim, eliminates concerns about preemption. In fact, another look at *Anderson* suggests that such a view is misguided.

In *Anderson*, the District Court quoted a lengthy portion of the Ninth Circuit's opinion in *Harris v. Maricopa County Sup. Ct.*. Perhaps forecasting the temptation of most readers to bypass actually reading the block quote, the *Anderson* Court went out of its way to highlight its importance, calling it "highly germane" to the preemption analysis:

> Our laws encourage individuals to seek relief for violations of their civil rights, and allow a defendant to recover fees and costs from the plaintiff in a civil rights case only "in exceptional circumstances" in which the plaintiff's claims are "frivolous, unreasonable or without foundation." . . . Congress

---
[18] *Id.* at 372-73.
[19] *Armour*, quoting *Harris v. Maricopa County Sup. Ct.*, 631 F.3d 963, 968 (9th Cir. 2010).
[20] Doc. 144 at 4.

and the courts have long recognized that creating broad compliance with our civil rights laws, a policy of the "highest priority," requires that private individuals bring their civil rights grievances to court. [] Even when unsuccessful, such suits provide an important outlet for resolving grievances in an orderly manner and achieving nonviolent resolutions of highly controversial, and often inflammatory, disputes. Guaranteeing individuals an opportunity to be heard in court instead of leaving them only with self-help as a means of remedying perceived injustices creates respect for law and ameliorates the injury that individuals feel when they believe that they have been wronged because society views them as inferior. Our system of awarding attorneys fees and civil rights cases is in large part dedicated "to encouraging individuals injured by... discrimination to seek judicial relief." ... this policy was adopted expressly in order to avoid discouraging civil rights plaintiffs from bringing suits, and thus "undercutting the efforts of Congress to promote the vigorous enforcement of" the civil rights laws.[21]

This analysis from the Ninth Circuit is not premised on outcomes. Nor is it claim-specific. The entire thrust of the policy argument is about encouraging civil rights plaintiffs to simply bring claims. If the is any doubt as to the intrinsic relationship between 13-420 and federal civil rights claims, it is resolved by the limited universe of cases analyzing this little-used statute.[22] Irrespective of the facial distinctions between state and federal excessive force claims, the reality is that, applied in this fashion, 13-420 effectively usurps federal law's limitation of civil rights fee-shifting to frivolous claims. And the Court's prior dismissal of an otherwise viable excessive force claim on procedural grounds in no way alters Congress's express policy *against* punishing civil rights claimants with fee awards for losing non-frivolous claims.

---

[21] *Id.* quoting *Harris*, 631 F.3d 963, 968, 971 (9th Cir. 2010).
[22] Tellingly, a Lexis keyword search for "13-420" reveals that there are no Arizona state court opinions (reported or unreported) that have ever addressed the statute in any context. And of the four (4) district court decisions to address section 13-420, every single one of them arises in the context of 1983 excessive force claims. *See Anderson*; *Longoria v. Pinal Cty.*, 2016 U.S. Dist. LEXIS 193039 (D. Ariz. March 17, 2016); *Mendez v. City of Scottsdale*, 2012 U.S. Dist. LEXIS 126591 (D. Ariz. October 7, 2016); *Smith v. City of Chandler*, 2014 U.S. Dist. LEXIS 165556 (D. Ariz. November 25, 2014).

## IV. Conclusion

Undersigned counsel's research suggests that this is the first court that has ever faced a proposed application 13-420 quite like this: A police officer whose employer paid for his legal fees, seeking reimbursement for fees related to state law claims in a federal civil rights action where section 1983 claims were previously dismissed on procedural grounds. Again, the flaws with such an argument are myriad:

If the Court agrees with Plaintiffs that the language of the statute is unambiguous, <u>the application must be denied</u> (because Defendant Bertz has not carried his burden that he "incurred" any fees or costs as expressly required by 13-420).

If the Court disagrees with Plaintiffs that the language of the statute is unambiguous, <u>the application must be denied</u> (because the legislative history of 13-420 indicates that its purpose was aimed at suppressing suits against innocent crime victims, not police officers facing civil rights claims).

And if the Court somehow resolves both of those issues against Plaintiffs, it must then address an issue of first impression: whether prior procedural dismissal of civil rights claims obviates concerns of preemption that preclude a police officer from recovering attorneys' fees under section 13-420 in cases where federal civil rights claims are not dismissed.

Whatever the path, Plaintiffs submit that the answer is the same: Defendant Bertz's application for attorneys' fees under 13-420 is improper and must be denied.

DATED this 22nd day of September, 2022.

THE PEOPLE'S LAW FIRM
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003

By: /s/ Stephen D. Benedetto
Stephen D. Benedetto
Heather Hamel

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2022, I electronically transmitted the attached document to the Clerk of the Court using the ECF System. This document and the Notice of Electronic Filing were automatically served on the same date to the following, who are registered participants of the CM/ECF System:

Kathleen L. Wieneke
Christina Gail Retts
Brendan F. Porter
WIENEKE LAW GROUP PLC
1225 W. Washington St., Suite 313
Tempe, Arizona 85281
kwieneke@wienekelawgroup.com
cretts@wienekelawgroup.com
bporter@wienekelawgroup.com

By: /s/ Stephen D. Benedetto
*An employee of The People's Law Firm*